UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| AIG PROPERTY CASUALTY COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>TESLA, INC.,<br><br>Defendant. | Case No. 3:26-cv-00110<br><br>Judge Waverly D. Crenshaw, Jr.<br>Magistrate Judge Luke A. Evans |

To: The Honorable Waverly D. Crenshaw, Jr., District Judge

**REPORT AND RECOMMENDATION**

This matter has been referred to the Magistrate Judge for preparation of a Report and Recommendation on Defendant's motion to compel arbitration. (Doc. No. 15.) For the reasons that follow, the Magistrate Judge recommends that Defendant's motion be Granted.

## I. Background

### A. Factual Background

On June 5, 2022, Randall Cobb ("Cobb") ordered a Tesla Model S Plaid using Tesla's online portal and paid a $250 non-refundable order fee. (Doc. No. 15-1 at 2.) Upon placing his order, Cobb executed[1] a contract with "Tesla, Inc. or its affiliate" (*id.* at 3) called the Motor Vehicle Order Agreement ("MVOA"). (Doc. No. 15-1 at 3–6.) The MVOA included an agreement to

[1] According to Defendant, "The MVOA was generated immediately upon Mr. Cobb's order placement on June 5, 2022, and transmitted to him via email confirmation containing his name, email address, physical address, and phone number—providing clear evidence that he received and accepted its terms. No physical 'wet' signature is required or expected for this step in Tesla's direct-to-consumer ordering process." (Doc. No. 21 at 1–2.)

arbitrate "which applies to any dispute between you and Tesla, Inc. and its affiliates (together 'Tesla')." (*Id.* at 5.) The arbitration agreement contained the following language:

> If you have a concern or dispute, please send a written notice describing it and your desired resolution to resolutions@tesla.com.
>
> If not resolved within 60 days, you agree that any dispute arising out of or relating to any aspect of the relationship between you and Tesla will not be decided by a judge or jury but instead by a single arbitrator in an arbitration administered by the American Arbitration Association (AAA) under its Consumer Arbitration Rules. This includes claims arising before this Agreement, such as claims related to statements about our products.
>
> We will pay all AAA fees for any arbitration, which will be held in the city or county of your residence. To learn more about the Rules and how to begin an arbitration, you may call any AAA office or go to www.adr.org.
>
> The arbitrator may only resolve disputes between you and Tesla, and may not consolidate claims without the consent of all parties. The arbitrator cannot hear class or representative claims or requests for relief on behalf of others purchasing or leasing Tesla vehicles. In other words, you and Tesla may bring claims against the other only in your or its individual capacity and not as a plaintiff or class member in any class or representative action. If a court or arbitrator decides that any part of this agreement to arbitrate cannot be enforced as to a particular claim for relief or remedy, then that claim or remedy (and only that claim or remedy) must be brought in court and any other claims must be arbitrated.
>
> If you prefer, you may instead take an individual dispute to small claims court.
>
> You may opt out of arbitration within 30 days after signing this Agreement by sending a letter to: Tesla, Inc.; P.O. Box 15430; Fremont, CA 94539-7970, stating your name, Vehicle Identification Number, and intent to opt out of the arbitration provision. If you do not opt out, this agreement to arbitrate overrides any different arbitration agreement between us, including any arbitration agreement in a lease or finance contract.

(*Id.*) On June 27, 2022, Cobb entered into a Lease Agreement at the Tesla location in Franklin, Tennessee that was signed by a representative of Tesla Motors TN, Inc. and Cobb for a 2022 Model S Plaid vehicle. (Doc. No. 19-1.) Paragraph 33 of the Lease Agreement consisted of an arbitration agreement nearly identical to the arbitration agreement in the MVOA. (*Id.* at 4.) The only material difference is a sentence, present in Paragraph 33 but missing from the MVOA, that

reads, "You further agree that any disputes related to the arbitrability of your claims will be decided by the court rather than an arbitrator, notwithstanding AAA rules to the contrary." (*Id.*)

Plaintiff AIG Property Casualty Company ("AIG") has summarized the core of this case as follows:

> AIG insures Mr. Cobb's real and personal property. On July 25, 2024, a fire occurred at Mr. Cobb's residence located in Nashville (the "Fire"). Subsequent investigation determined that the Fire originated within a defective Tesla charging cable that was supplied as original equipment with a 2022 Tesla Model S Plaid leased by Mr. Cobb (the "Model S"). AIG paid its insured more than $4,000,000.00 for the damages resulting from the Fire, and seeks to recover those damages via its subrogation rights from Defendant Tesla, Inc.

(Doc. No. 19 at 2.)

### B. Procedural History

On December 30, 2025, AIG filed this action against Defendant in Davidson County Circuit Court asserting claims of strict product liability, negligence, failure to warn, breach of express warranty, breach of implied warranty of merchantability, and breach of implied warranty of fitness for a particular purpose. (Doc. No. 1-2.) Defendant removed the case to this Court on February 2, 2026. (Doc. No. 1.) On March 4, 2026, Defendant filed its answer. (Doc. No. 12.) In its answer, Defendant "affirmatively assert[ed] that the vehicle and the charging cable involved in this case [were] neither in a defective condition nor [were they] unreasonably dangerous, . . . at the time they left the control of the Defendant . . . . " (*Id.* at 6.) On March 27, 2026, Defendant filed the instant motion to compel arbitration. (Doc. No. 15.) AIG responded in opposition (Doc. No. 19), and Tesla replied. (Doc. No. 21.)

## II. Legal Standard

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, a contractual agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract or as otherwise provided" elsewhere in the statute.

9 U.S.C. § 2. The FAA also requires a stay, upon request of a party, of litigation until the arbitration has concluded. *Id.* § 3. "We have described this provision as reflecting both a liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract. In line with these principles, courts must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal quotation marks and citations omitted). The stay provision of Section 3 implicitly authorizes courts to issue orders compelling arbitration "when one party has failed or refused to comply with an arbitration agreement." *Hergenreder v. Bickford Senior Living Grp., LLC*, 656 F.3d 411, 416 (6th Cir. 2011) (internal quotation marks and citations omitted).

"When considering a motion to stay proceedings and compel arbitration under the Act, a court has four tasks: first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000) (citation omitted). "The party moving to compel arbitration must therefore present some evidence that the parties agreed to arbitrate." *Abbas v. Truist Bank*, 774 F. Supp. 3d 929, 935 (M.D. Tenn. 2025) (citation omitted). State law determines whether a valid agreement to arbitrate exists. *Id.*[2]

Once the movant presents prima facie evidence of the agreement, the burden shifts to the opposing party to show that the arbitration agreement is invalid or that the claims fall outside the

[2] The parties agree that Tennessee law applies.

scope of the agreement. *Merritt v. Square Cap., LLC*, No. 2:24-CV-2196, 2024 WL 4183316, at *3 (W.D. Tenn. July 25, 2024) (citations omitted), *report and recommendation adopted*, No. 2:24-CV-02196, 2025 WL 842247 (W.D. Tenn. Mar. 18, 2025). "In order to show that the validity of the agreement is in issue, the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate. The required showing mirrors that required to withstand summary judgment in a civil suit." *Great Earth Companies, Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002) (citation omitted). Borrowing the standard for summary judgment means that courts "view all facts and inferences drawn therefrom in the light most favorable to the [opposing party] and determine whether the evidence presented is such that a reasonable finder of fact could conclude that no valid agreement to arbitrate exists." *Id.* (citations omitted). The Court must view the arbitration agreement "in light of the strong federal policy favoring arbitration, resolving any doubts as to the parties' intentions in favor of arbitration." *Albert M. Higley Co. v. N/S Corp.*, 445 F.3d 861, 863 (6th Cir. 2006). "If a dispute is even arguably within the scope of an arbitration clause, the dispute is arbitrable." *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 429 F.3d 640, 650 (6th Cir. 2005) (citation omitted).

## III. Analysis

Defendant argues that the MVOA's arbitration provision controls because it requires arbitration for "any dispute arising out of or relating to any aspect of the relationship between you and Tesla." (Doc No. 15-1 at 5.) Defendant takes the position that the MVOA controls regardless of the later Lease Agreement because it "overrides any different arbitration agreement between us, including any arbitration agreement in a lease or finance contract." (Doc. No. 15 at 5.) Defendant further argues that AIG, as a subrogee, stands in Cobb's shoes and is also bound by the express terms of the agreement. (*Id.* at 7.) Lastly, Defendant asserts that all of AIG's claims fall within the broad scope of the arbitration agreement. (*Id.* at 8.)

AIG opposes the motion by asserting that the MVOA is not the controlling agreement. (Doc. No. 19 at 1.) Instead, AIG argues that that Lease Agreement controls and that Defendant is not a party or signatory to that agreement. (*Id.*) Lastly, AIG argues that the damages sought "did not arise from the relationship between Mr. Cobb and any Tesla entity." (*Id.*)

### A. Agreement to Arbitrate

Defendant has established the existence of a binding agreement to arbitrate. On June 5, 2022, Cobb, via Defendant's online portal, ordered the vehicle by configuring his vehicle and paying the $250 down payment.[3] By doing so, Cobb agreed to the terms of the MVOA, which bound him to arbitration.[4] AIG asserts that there is no evidence that Cobb ever "received this document, let alone agreed to it." (Doc. No. 19 at 5.) AIG asserts further that, because it contemplates a "purchase" and is unsigned, the agreement was never completed. (*Id.*) AIG ignores the fact that the contract was completed.[5]

Contrary to AIG's argument, Cobb's traditional signature is not required. *See Gala v. Tesla Motors TN, Inc.*, No. 2:20-CV-2265, 2020 WL 7061764, at *4 (W.D. Tenn. Dec. 2, 2020) ("Clicking a button to accept a contract online is a valid method of signing a contract.") (citation

[3] AIG argues that this agreement lacked consideration and that the agreement was never completed. (Doc. No. 19 at 5.) This argument ignores the reality of the situation. Cobb ordered the vehicle by paying $250. Defendant configured the vehicle to Cobb's specifications and delivered it. "All contracts in writing signed by the party to be bound are prima facie evidence of a consideration. Thus, the party claiming a lack of consideration for a validly executed contract has the burden of overcoming this presumption." *In re Estate of Brown*, 402 S.W.3d 193, 200 (Tenn. 2013) (citation omitted). AIG has failed to overcome the presumption.

[4] The MVOA provides that the "terms and conditions" of the agreement "are effective as of the date you place your order and make your Order Fee." (Doc. No. 15-1 at 3.) The MVOA further contemplates that the agreement can be accepted "by electronic means or otherwise." (*Id.* at 5.)

[5] Cobb received the car that he configured. The fact that he decided to lease the vehicle instead of purchasing it is of no consequence.

omitted); *see also Sgouros v. TransUnion Corp.,* 817 F.3d 1029, 1033-1034 (7th Cir. 2016) ("Courts around the country have recognized that this type of electronic 'click' can suffice to signify the acceptance of a contract.") (citations omitted); *Raebel v. Tesla, Inc.*, 451 F. Supp. 3d 1183, 1190 (D. Nev. 2020) ("Plaintiffs had a meaningful opportunity to review the Arbitration Provision when they placed the online order for the vehicle."). Additionally, Tennessee law recognizes the validity of electronically signed contracts. Tenn. Code Ann. § 47-10-107(d) ("If a law requires a signature, an electronic signature satisfies the law.").

The parties to the MVOA at that time were Cobb plus Tesla, Inc. and its affiliates. (Doc. No. 15-1 at 5.) There is no evidence before the Court that Cobb ever opted out of the arbitration provision as was allowed under the agreement. (*Id.*) Therefore, the MVOA requires arbitration of "any dispute between [Cobb] and Tesla, Inc. and its affiliates." (*Id.*)

Once the vehicle arrived, Cobb entered into the Lease Agreement that included an almost identical arbitration provision. (Doc. No. 19-1 at 4.) That agreement was electronically signed by Cobb and the CFO/Treasurer of Tesla Motors TN, Inc. (*Id.*) Regardless of who signed the contract, the Lease Agreement, like the MVOA, makes clear that the agreement "applies to any dispute between [Cobb] and Tesla, Inc. and its affiliates."[6] (*Id.*) There is no evidence that Cobb ever opted out of the arbitration provision. Cobb's execution of both agreements illustrates a clear agreement to arbitrate, and AIG has failed to establish that there is a genuine issue of fact as to the validity of the agreements to arbitrate. *See Great Earth Cos.,* 288 F.3d at 889.

The parties go to great lengths to argue which contract controls. AIG rejects the MVOA as unsigned and prefers the Lease Agreement because Tesla, Inc. and AIG are not signatories to the

---

[6] The terms of the Lease Agreement make clear that Tesla, Inc. is bound to the terms of the agreement even if it was signed by one of its affiliates.

contract. The Magistrate Judge disagrees with AIG's assessment. The parties' treatment of this issue serves as a distraction and ignores the obvious: both agreements demand arbitration. That fact satisfies the threshold question of whether there was an agreement to arbitrate.

**B. Scope of the Agreement**

AIG also argues that the issues raised in the lawsuit fall outside the scope of the arbitration agreements. The Magistrate Judge disagrees.

The Sixth Circuit has developed a two-part test to determine the scope of an arbitration agreement:

> Generally, in determining whether a specific dispute falls within the scope of a valid arbitration provision, we ask whether the action could be maintained without reference to the contract or relationship at issue, looking to what the action by necessity must describe. If such a reference is not necessary to the resolution of a particular claim, then compelled arbitration is inappropriate, unless the intent of the parties indicates otherwise. However, where the parties have entered into multiple contracts as part of one overall transaction or ongoing relationship we have adopted a more narrow test of arbitrability, examining which agreement determines the scope of the contested obligations.

*Matalka v. Home Point Fin. Corp.*, 753 F. App'x 372, 375 (6th Cir. 2018) (unpublished opinion) (cleaned up). In applying *Matalka* to the instant matter, the Magistrate Judge finds that arbitration clauses encompass the current dispute. Cobb and Defendant had an ongoing relationship that resulted in two contracts being executed. The relationship began with the MVOA and necessarily resulted in the Lease Agreement. Both arbitration provisions provide that "any dispute arising out of or relating to any aspect of the relationship between you and Tesla will not be decided by a judge or jury but instead by a single arbitrator . . . ." (Doc. Nos. 15-1 at 5, 19-1 at 4.) Generally, "[w]hen faced with a broad arbitration clause, such as one covering any dispute arising out of an agreement, a court should follow the presumption of arbitration and resolve doubts in favor of arbitration." *Telecom Decision Makers, Inc. v. Access Integrated Networks, Inc.*, 654 F. App'x 218, 222 (6th Cir. 2016) (unpublished opinion) (citations omitted). When an arbitration clause is

broad, only an express provision excluding a specific dispute, or the most forceful evidence of a purpose to exclude the claim from arbitration, will remove the dispute from consideration by the arbitrators. *Livingston v. Jay Livingston Music, Inc.*, No. 3:21-CV-00780, 2023 WL 4471705, at *5 (M.D. Tenn. July 11, 2023) (Crenshaw, *C.J.*) (quoting *Watson Wyatt & Co. v. SBC Holdings, Inc.*, 513 F.3d 646, 650 (6th Cir. 2008)).

AIG asserts that the arbitration agreements are inapplicable here because the agreements provide that "[t]he arbitrator cannot hear class or representative claims or requests for relief on behalf of others purchasing or leasing Tesla vehicles." (Doc. No. 15-1 at 5.) Based on that language, AIG argues that "it explicitly excludes this these types of claims from arbitration." (Doc. No. 19 at 4.) This argument is misplaced because the instant dispute is not a "class or representative claim." Instead, AIG, as a subrogee, stands in the shoes of its insured. *See Old Republic Life Ins. Co. v. Woody*, 652 S.W.3d 418, 427 (Tenn. Ct. App. 2022) ("Subrogation allows an insurer to 'stand in the shoes' of an insured and assert the rights the insured had against a third party."); *see also Hudson for Ben. of Hudson v. Hudson Mun. Contractors, Inc.,* 898 S.W.2d 187, 190 (Tenn. 1995) (a subrogee has no greater rights than the subrogor). AIG paid Cobb's fire claim and can now assert whatever right that Cobb has against Defendant to recoup those damages. In this instance, that means that if Cobb is bound to arbitrate then so is AIG.

AIG asserts that the cause of the fire originated from the charging cable that was provided as standard equipment with the lease of the vehicle. AIG's claims relating to negligence, breach of warranty, and products liability certainly fall into "[an] aspect of the relationship between [Cobb] and Tesla" and must be determined by an arbitrator, not the Court.[7] Any doubt must be

[7] As contemplated by the Lease Agreement, the Court has determined the arbitrability of the claims raised by AIG.

resolved in favor of arbitration. *See Yaroma v. Cashcall, Inc.*, 130 F. Supp. 3d 1055, 1065 (E.D. Ky. 2015) (quoting *Moses H. Cone Mem'l Hosp.,* 460 U.S. 1, 24–25 ("[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.")).

Likewise, the Magistrate Judge also finds that the claims raised by AIG in the complaint could not be maintained without reference to the relationship between Cobb and Defendant. All of the claims center around the damage caused by the fire that occurred at Cobb's home. AIG, standing in the shoes of Cobb, asserts that the sole cause of the fire was the charging cable that Defendant provided as standard equipment when Cobb ordered and subsequently leased his vehicle. But for Cobb's relationship with Defendant, there could be no claims. The agreements that were necessary to effectuate the order and lease of the vehicle mandated arbitration. When viewed in light of the strong federal policy favoring arbitration, resolving any doubts as to the parties' intentions in favor of arbitration, the Magistrate Judge finds that the issues raised by AIG in the complaint must be resolved in arbitration.

## IV. Recommendation

For the reasons stated herein, the Magistrate Judge recommends that Defendant's motion to compel arbitration (Doc. No. 15) be GRANTED and that this matter be stayed pending arbitration.

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this Report and Recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004).

A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 7th day of October, 2026.

LUKE A. EVANS
United States Magistrate Judge